Good morning, your honor. May it please the court. I'm Lisa Rasmussen and I represent the appellant Anthony Hylton. I would like to reserve two minutes of my time for rebuttal. Please try to watch the clock, but if you miss it and I notice it, I'll seek to mention it. Will do, thank you. So in this case, Mr. Hylton was convicted of bank robbery. The sentinel issue, there were three issues raised on appeal. One was that there was insufficient evidence for the conviction. Two has to do with the statutory interpretation as to whether it's a crime of violence under the categorical approach. And three, and perhaps the most important issue that I suspect the court wants to hear the most about is the traffic stop and the suppression issue. I agree with that. Can I just ask for clarification? There's been said that armed robbery is a crime of violence in the ninth circuit. There's been no intervening case law since then, is there? I mean, you're just raising that argument to preserve it, or do you think there's a reason we would depart from Watson? Your honor, I raised it to preserve it. Okay, thank you. Yeah, so I'll just dive into the traffic stop issue. The argument in this case is that the traffic stop was complete when the field sobriety tests were completed, and that the triple eye check that resulted in the... Can I ask you what's your position for why that was complete? Because they found that inconclusive and felt, and they consulted and had to call out an expert to come out. Why wouldn't that have extended? Is your contention that that was done contrary to policy, or there was otherwise improper about them waiting for another expert to come out? Well, they actually called off the experts. So if you look at... So I was asked to transmit exhibits and they were transmitted to the court on a flash drive. If you look at defendants exhibit 502 that's on that flash drive, it's the CAD report, which is the kind of minute by minute printout of what's going on with the law entry at 734. But they had called off the DRE, and that's the drug recognition expert sometime earlier, because they had determined that they didn't need it. So what happens is when they originally make contact with him, he's asleep, they wake him up. He kind of is groggy, they have him put the car in park, turn it off, get out. He gets out, there's some Advil tablets on his shirt that fall to the ground. And then they ask him, they go through a series of questions. Where were you? Where are you? What time of day do you think it is? And then they do the field sobriety test, and they start with the nystigmus gaze test. And then they have him do heel toe, and then they have him do a one leg stand. In the testimony at the evidentiary hearing, the officers appear to concede that they didn't need the DRE, and they called the DRE, the drug recognition expert off. And in the CAD report... I thought they called the drug expert off after they realized that he was going to be arrested as a felon in possession. Well, you're partially right on that, because the CAD report also says, will be, can disregard DRE, and this is at 649 a.m., will be booking subject on unrelated, and then it's abbreviated and hard to read. But they had determined after the field sobriety, and one of the officers in the video says, he's clearly not impaired. And then... But counsel, the district court, and I'm reading the transcript at ER25, the district court said, the field sobriety test was conducted, the defendant failed two of the three tests. So that was a factual finding, right? It was a factual finding made by the district court. I actually don't think there's anything in the record to support that. So when you go to the testimony in the record, the officer, I think, testified that he probably... My vague recollection of it, and I read it again this morning, was that the issues that he may have not done well on, where the one leg stand, but the officer said, I probably wouldn't have passed it either, because it was so cold. So counsel, let me ask you, let's assume for the sake of argument that we were to decide that this went on longer than it should have. The facts, as I understand them, was your client was asleep, they found crushed pills and a half empty bottle of alcohol in the car, there was a gun in the backseat, and your client couldn't produce a license, registration, or insurance. In your view, what should the police have done? So my position is that the police should have concluded the traffic stop, and done what? And either arrested him for felony possession, which is what they ultimately did, or released him and concluded the traffic stop, there was no... Released him in what way? Not released him to go drive the car away, right? Well, he wasn't impaired, that's the thing. But he had no license, no registration, no insurance, and there was a half bottle of alcohol in the car and a gun in the backseat. So, I mean, I don't see how giving him the car back could have been reasonable. And if they've already seized the gun, I don't see what there is that could be suppressed here, even if we decided they should have let him walk away. How do you suppress the police running somebody's name through a records, the NCIC or something like that? How could that possibly, under Wong Sun or any other case, be the fruit of any poisonous tree? Well, so the routine traffic stop involves doing a basic records check through what we in Nevada would call scope, to make sure that there's no outstanding warrants. And that was done, the triple eye check is the more thorough and that's not part of a routine. No, no, I understand that. But if the illegal part was not letting him go, how is running a records check through a computer database exploiting the illegality in the way the Supreme Court and Wong Sun and following cases has told us we need to judge that? How could that be the fruit of the poisonous tree? Because there was no reasonable suspicion to run that. You don't need anything to run a computer check. I mean, the police don't need any reasonable suspicion to do a computer check. That defendant I don't see has any standing to complain that they've accessed a public database. But even if that weren't true, I don't see how that could be whether they did it five minutes later, or five days later. I understand what the court is saying. I just think that it was a prolonged that it prolonged the stop. And it clearly meets the definition of a prolongation of the stop. I see that I'm at two minutes, if I may reserve the remainder of my time, I would appreciate that. Yeah. May we'll give you your full plan two minutes. Thank you. Good morning, may it please the court Elizabeth White for the United States. You know, we go back to first principles, and the touchstone of the Fourth Amendment is reasonableness. And that is evaluated under an objective standard. What that means is under the Fourth Amendment, certain conduct is permitted under certain circumstances, regardless of the subjective motivations or beliefs or intent of the Can I ask you what if this had just been a normal stop? They hadn't seen the gun and they decided to run a criminal history check? Would that be a Fourth Amendment violation to just run it on a standard stop? You know, interestingly, that was not raised below. I mean, that was not specifically litigated below and I looked and I don't see anything in the Ninth Circuit. You know, the Ninth Circuit has said, you know, in Evans and in and in other cases that part of the routine traffic stop is the check for warrants. Other circuits have said that that checking for criminal history is part of a routine traffic stop. And the Supreme check is part can be part of a routine traffic stop by by citing the 10th 10th Circus decision and Holt and in the parenthetical. So in Rodriguez, the Supreme Court cites the 10th or maybe the eighth I think it's the 10th Circuit decision in a case called Holt and the parenthetical there says that a criminal criminal history check is part of a routine stop. As far as I know, does Evans box us in at all? There's a footnote seven in Evans sort of suggests and and it's not clear what Evans is talking about whether it's just in the context of that case or more broadly that a criminal history check could could have prolonged unnecessarily prolonged the stop. The the issue in Evans was a was a ex-felon registration check. You know, they knew that he was a felon. And so they were actually they called to a completely separate thing to check and see if he was registered at the right address. And, you know, my analogy to that is, you know, they stop somebody and realize that he's the taxpayer. And so they take a little break to call the IRS and make sure that he's filed his taxes. I mean, that is just like completely unrelated to anything to do with the stop, just pure, you know, investigating another random crime because you've got someone in front of you here. And of course, going back, as Judge McKibben found, like none of this really comes into play at all because the officers were reasonable in requesting the drug recognition expert. And once they did that, well, I what I'm referencing is in footnote seven of Evans are we said even before Rodriguez courts observed that extending traffic stops to and it cites the 11th Circuit and also the 7th Circuit. And so I guess I'm wondering if we were going to adopt a rule. When would a criminal history check be lawful and when would it not? Is your position that it's always lawful? And I know other courts have said that. Or are there times when a criminal history check we can we adopt such a bright line rule that it's just part of I, of course, I would advocate for Yes, it's part of an officer safety issue. But I would also say that because that issue has not been decided, and as the court recognized in Evans has not been decided in the circuit, it seems to me preferable for this court to wait until that issue is both necessary and also fully briefed and can consider on the one hand, to some degree, this is I mean, you're saying that, that we shouldn't go so far as to say it's always permissible in this case, but we do have to decide, at least in the context here, whether a criminal history search, I mean, if the rule is that in some circumstances, a criminal history search could violate the Constitution, then we sort of have to start delineating when that is when that isn't. Right. And but to that, I would say that that if there are circumstances where running a criminal history check is not permitted, necessarily, that would be a case where the running of the criminal history check prolongs the duration of the stop, right. And in this case, what Judge McKibben said, and I look at pages 26, and page 30 of the excerpt of record part of his findings of fact and conclusions of law, where he goes through the circumstances that the officers encountered, and and the actions that they took, which was to call their sergeant to lay out the situation and to request that a drug recognition expert come to the scene and Judge McKibben found as a factual matter, that that was an entirely reasonable thing for the officers to do given and and pursuant to department policy, given the circumstances they found themselves. And so once that happened, and they're waiting for that DRE to come, you know, now we're in the situation of Mendez or Mueller versus Mina. I mean, now we're now they're just waiting. And while they're sitting there waiting, nothing that they do questioning him running history checks. And I mean, nothing is a separate Fourth Amendment prolongation of the stop because this is I mean, I think I think the argument of course, from from your opposing counsel is that this did prolong the stop because the stop was concluded before the results of the criminal history check came back. I assume your response is that's not what the district court found. That's not what this district court found. And I will say that does it does it make any difference? I mean, does it make any difference here? Because we're not talking here about any statements he made, right? So let's let's say that's not right. Let's say it did unnecessarily prolong the stop. Does it make any difference? It would not. And Judge McKibben made that alternative finding as well. But so so yes, if you wanted to go that route, it wouldn't have made a difference because the because his criminal history is not something that is that the officers are prohibited. I mean, if they had if they had let him drive away, you know, then they could have gotten the triple I check and found that he was a felon in possession. And, you know, then they would have had to stop him again. And it would have been more dangerous this time likely, but but they weren't going to give him back the gun. Well, I mean, this is I mean, it's it's it's the gun was seized before they ever ran the check, right? Right. But I think what I'm saying is, I mean, we're now we're in this hypothetical, like what what would have happened if they had done something differently than than they did? And so I think that I think that what my friend on the other side is suggesting is that once once they did the field sobriety tests, and in in my friend on the other side, and in the magistrate judges view, determined that he was not impaired, that somehow their subjective view that he wasn't impaired meant that they should have said, Oh, okay, well, since you're not impaired, even though you don't have a license, you don't have registration or insurance, let's just give you back your gun and let you drive away. And I don't think that that's reasonable. And Judge McKibben specifically found that that would not have been reasonable, it would not have been consistent with department practice. But I think that that's, I think that's what what my friend on the other side is suggesting should have happened. And what I'm saying is, is that even if that had happened, then they certainly I mean, they were what six seconds away from having the triple I check by the time they found out that he didn't have any warrants to the which is presumably when they would have let him go to the time that they found out that he was a felon. I mean, that was a matter of less than 30 seconds, or maybe less than 10. Can I ask you about the I mean, the 11th Circuit held that the criminal history check was improper because it wasn't requested until seven minutes after he'd written the warning for the traffic violation. Is that the way we would distinguish the 11th Circuit case from this case is that the criminal history, there's no dispute, regardless of when the traffic stop stop ended. There's no dispute that the criminal history check was requested before the traffic stop was ended. Yes, yes, I think that I think that is true. And now I mean, it is true that the magistrate judge, and I think that the appellant here on appeal is suggesting that after the field sobriety test, where he failed two out of the three tests, and there is plenty of evidence in the record of that both testimony on the video of the officers discussing it afterwards, that somehow after that, they concluded that he was not impaired and that the stop should have ended then. But as Judge McKibben said, Wait a second, he still hasn't provided a driver's license. We still don't know his name. We still don't know if he has insurance or if the car is that the stop that the purpose of the stop ended after the field sobriety test. I mean, that's just as a factual matter that can't possibly be true, because they still didn't know whether he was licensed to drive or insured or whether the car was registered. So, you know, as Judge McKibben said, and again, you know, I would commend your attention to pages 26 and 30 of his of the excerpt of record with his findings, he made very clear that that what the officers did here, even if they thought maybe he wasn't impaired, you know, even if they were unsure, because it was cold, and maybe he failed the test because he was because it was cold. It was still entirely proper for them to contact their sergeant and lay out the situation and entirely proper for the sergeant to have a DRE officer sent out to the scene. I see I'm over my time. If you have any questions, I'm happy to No questions. Thank you, Your Honor. So I'm going to just address a couple issues. I mean, first, Evans is clear that any added time to a stop following the completion of the stop is a measurable prolongation that that I don't think that's true. Evans says, and dicta put no seven courts observed that extending traffic stops may be unlawful. So I don't even think Evans says what you just said, which is it is unlawful to extend it. Okay. Fair enough. The Third Circuit has found and that's one of the cases I cited in the reply brief, and that's United States versus Clark, they've found that a 20 second prolongation is unreasonable. So that's all I'm sorry to interrupt your rebuttal. But I'd ask you to clarify one thing. Are you saying that the gun should have been suppressed or not? Yes. Okay. And explain to me what it is that justifies the suppression of the gun? Well, there I think this goes to the heart of the issue. So thanks for asking the question, Judge Bennett. It's not illegal as a felon to drive. It's illegal as a felon to possess a gun. The criminal history check is what's at issue, right? But didn't the judge make a finding that they seized the gun for officer safety? Wasn't that a factual finding by the district court? Yes, and that they ran a check on it to make sure it wasn't stolen, which it wasn't. And they're allowed to do that. But then when the traffic stop is complete, you put you allow the person to leave the traffic stop. And that would So you're saying that you're saying the gun should be suppressed, because they shouldn't have prolonged the traffic stop. They shouldn't have run the records check. And if in not withstanding the condition and everything else, they should have let him leave with the gun. Yes. And if they determined at a later date, that he was a felon in possession, they certainly could have brought a charge. It was unreasonable not to give him back the gun. Correct. Judge Gould, I took a lot of Ms. Rasmussen's rebuttal time, and I would ask your indulgence to give her back the time for her rebuttal that I took away. I don't like to rebuttal. We'll give her extra time. Thank you, Judge Gould and Judge Bennett and Judge Nelson. I'm just going to wrap it up with I think to me, the heart of the issue is Evans, because it's not permissible to always do. We don't have any authority in the Ninth Circuit that says it's permissible to always run a criminal history check. And that's the issue I'm really driving at is that it's not unlawful for someone even with a criminal history to drive. And so if we come to the conclusion that every time someone is pulled over, that they get a criminal history check run on them, that's an unrepentable situation. I think that's unconstitutional. So that to me is the even bigger picture of this case. And with that, I'll conclude. And I appreciate the little bit of extra time you granted me. That's fine. Well, thank you, Ms. Rasmussen. I want to thank both Ms. Rasmussen and Ms. White for their advocacy, which is a big help to us. At this point, the United States v. Carlton shall be submitted, and the Council will hear from us in due course. And again, thanks for your help. Thank you.
judges: GOULD, BENNETT, NELSON